UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
EMILY R. FRIED,

                         Plaintiff,

            - against -

THE NEW YORK STATE OFFICE OF
CHILDREN AND FAMILY SERVICES,
BUREAU OF EARLY CHILDHOOD SERVICES,
JOHN JOHNSON, SUZANNE SENNETT,
LARRY BROWN, JOSEPH CONNOLLY,
AURORA FARRINGTON, MARY ELLEN
DEAGAN, ROBIN BELLAR, SARAH BEYER,
PAMELA BROWN, SALVATORE D'ANGELO,
KEVIN SMITH, LOIS TUCKER, RON MCLEAN,
ANGELA HAZEL, SHARON WALKER AND
BRADLEY TYGAR, Personally and in Their Official
Capacities as Employees of The New York State
Office of Children and Family Services.

                         Defendants.
------------------------------------------------------------------X

**REPORT AND RECOMMENDATION**

CV 05-5522 (NGG) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

      Plaintiff Emily R. Fried has moved this Court for an order extending her time to serve the Complaint in this action, which was filed on November 28, 2005. Typically, issuing such an Order would be within my jurisdiction. However, the issues raised in the motion (*inter alia*, statute of limitations) may result in a dispositive determination. Because of that potential outcome, I am issuing this decision as a Report and Recommendation to District Judge Garaufis.

      The New York State Office of Children and Family Services ("OCFS"), Bureau of Early Childhood Services, John Johnson, Suzanne Sennet, Larry Brown, Joseph Connolly, Aurora Farrington, Mary Ellen Deagan, Robin Bellar, Sarah Beyer, Pamela Brown, Salvatore D'Angelo, Devin Smith, Lois Tucker, Ron McLean, Angela Hazel, Sharon Walker and Bradley Tygar,

personally and in their official capacities as employees of the OCFS (collectively, "Defendants") oppose Plaintiff's motion for an extension of time to serve the Complaint on the grounds that Plaintiff has not satisfied any of the necessary criteria for permitting such an extension. For the reasons set forth below, and though mindful of the regrettable outcome which may result here, I am respectfully recommending to Judge Garaufis that Plaintiff's motion be DENIED and that her claims be dismissed.

**I.   BACKGROUND**

In 1988, Plaintiff established a licensed and certified Incorporated Group Family Day Care Home in Manhasset, New York. The program operated through the corporate entity certified by the New York Secretary of State d/b/a "Miss Emilie's Child Care and Pre School Center, Inc." On April 4, 1997, Plaintiff submitted a completed application package for a second separate license to operate a "Multiple/Double-Group Family Day Care Program" to be established on the first floor of her already licensed Group Family Day Care Home. *See* Compl. ¶ 36. Defendants were required to respond within 60 days of the application, but did not do so until August 20, 1997 – 136 days late according to Plaintiff. *Id.*, ¶ 39. On August 20, 1997, Defendants Hazel and two inspectors, Foster and Tygar, arrived at Plaintiff's home unannounced, purportedly to investigate a complaint and to conduct the required inspection for Plaintiff's application for a multiple "Double Group DayCare" license on the first floor of her home. *Id.*, ¶ 40. The Defendants then issued several violations, which Plaintiff addressed in a letter. In that letter, Plaintiff also criticized the quality and accuracy of the inspectors' findings and procedures, as well as the department's regulations. *Id.,* ¶ 43.

After a series of follow-up inspections, Plaintiff claims that Defendants D'Angelo and Tygar assured her they had found no uncorrected or new deficiencies and that she should be getting her license in a couple of weeks. *Id.*, ¶ 47. Plaintiff did not receive a reinspection report or any communication regarding her license, so she wrote a letter to Commissioner Johnson regarding these issues. *Id.*, ¶ 51. Matters between Plaintiff and Defendants did not go smoothly thereafter and Defendants issued Plaintiff a "cease and desist" notice for alleged egress violations. *Id.*, ¶¶ 53-58. While these inquiries persisted, Plaintiff was critical of Defendants and made repeated complaints concerning their negligent pattern of abusive lateness, and their violation of their own regulations regarding the processing and issuing of license. Plaintiff was particularly outspoken after she received notice of the denial of her license. *Id.*, ¶ 61. Plaintiff appealed the denial of her additional license and engaged in multiple hearings on this issue between March 1998 and June 2001. *Id.*, ¶ 64. Plaintiff asserts that in retaliation against her, Defendants removed Plaintiff's licensed program from the New York State Central Registry list for child day care programs and providers. *Id.*, ¶ 69. According to Plaintiff, the final damaging blow against her came in the form of a letter authored by Defendant Sennett stating that because Plaintiff had been taken off the State List of Care Providers, she had no role in the child care program, was completely stripped of her qualifications and would not be recognized as a day care/child care provider. *Id.*, ¶ 78.

As a result of this alleged course of conduct by Defendants, Plaintiff, by her original counsel, Brian Raum, filed the Complaint on November 25, 2005, pursuant to 42 U.S.C. §§ 1983 and 1986, claiming that Defendants violated her civil rights by illegally retaliating against her based on her criticism of them  In addition, Plaintiff claimed she was deprived of due process

3

and equal protection under the Fourteenth Amendment.  Plaintiff complains of actions taken by one or more of the Defendants beginning in February 1995 and purportedly culminating in April 2005.  According to the Complaint, these claims emanate from Defendants' alleged refusal to provide Plaintiff with a license to operate a "Multiple Double Group" program.  The "Multiple Double Group" license would have allowed Plaintiff to provide day care services to more than 12 children at the day care facility she operated in her home.

According to the proof of service filed by Plaintiff on January 6, 2006, the Complaint was served on the New York State Attorney General's Office on December 14, 2005.  On January 6, 2006, a copy was sent by certified mail to the OCFS, Bureau of Early Childhood Services, in care of John Johnson on behalf of each of the agencies and individuals named in the Complaint.  On March 28, 2006, one day before the expiration of the 120-day period provided in Fed. R. Civ. P. 4(m), Plaintiff's counsel telephoned John Gasior, Assistant Attorney General, to request an extension of time for Plaintiff to effect service of the Complaint.  In his March 29, 2006 letter response to Plaintiff's then counsel, Mr. Gasior pointed out that Plaintiff had been notified on February 6, 2006 that service was improper and that while Mr. Johnson might be willing to waive proper service, each of the remaining Defendants needed to be served properly.  The March 29 Gasior letter went on to note that Plaintiff's counsel did nothing to cure the defective service following the February 6, 2006 telephone call from the Attorney General's Office – none of the Defendants was ever served and no stipulation was ever provided to Mr. Johnson regarding his willingness to waive service.  The March 29, 2006 letter plainly stated that "given plaintiff's failure to obtain personal jurisdiction over any defendant, and the lapse of 120 days after plaintiff's filing of the complaint, I am in no position to consent to your request for an

extension of time to effect service on any defendant." Plaintiff's then counsel did not move to extend the time to serve the Complaint in March of 2006, nor did he take any action to correct the defective service.

New counsel was retained by Plaintiff in January 2007. The law firm of Leeds, Morelli & Brown, P.C. filed a notice of appearance on January 3, 2007. On being notified via the Court's electronic filing system that a Notice of Appearance by new counsel had been filed, and after observing on the docket sheet that this case had been dormant for some time, I scheduled a telephone conference for January 10, 2007 to discuss the status of the case. No Answer had been filed by any Defendant in the case. No appearance was made by counsel for Defendants at the January 10, 2007 phone conference. At that time, Plaintiff's counsel indicated his intent to move for a default judgment against Defendants.

On January 11, 2007, the Court received a letter from Assistant Attorney General Gasior indicating that he had not heard from Plaintiff since his March 29, 2006 letter and that entry of default judgment at this time would be inappropriate because the Defendants had not been properly served. After several telephone conferences to discuss the issues raised by Mr. Gasior's letter, a briefing schedule was set on Plaintiff's motion for an extension of time to effectuate service. I have reviewed Plaintiff's Memorandum Of Law In Support Of Plaintiff's Motion To Extend Time For Service Of Complaint; the Declaration of Matthew S. Porges and attachments thereto; Defendants OCFS and Johnson's Memorandum Of Law In Opposition To Plaintiff's Motion To Extend Time For Service Of The Summons And Complaint; Declaration of John P. Gasior and exhibits thereto; the Affidavit of Diane M. Deacon; and Plaintiff's Reply Memorandum of Law In Further Support Of Plaintiff's Motion To Extend Time For Service Of

Summons and Complaint. Based upon my review of the materials provided to me and based in large part on the absence of any explanation by Plaintiff for the delay, despite various opportunities to do so, I find that Plaintiff has not advanced any good cause excuse for her failure to serve Defendants for nearly 15 months. Therefore, I have little alternative but to recommend to Judge Garaufis that this motion be denied.

## II. DISCUSSION

### A. Legal Standard For Sufficient Service Of Process

Fed. R. Civ. P. 4(j)(2) requires service of process upon the State of New York to be carried out in the manner prescribed by New York law. Under New York C.P.L.R. § 307(1), service upon the State of New York must be effected by delivery of a summons and complaint to the New York State Attorney General. It is undisputed that Mr. Raum executed such service on December 14, 2005. In addition to service of process on the state Attorney General, New York C.P.L.R. § 307(2) requires service upon the appropriate state agency's "principal office" and adding on the front of the envelope the words "URGENT LEGAL MAIL," all in capital letters. Failure to include this legend can result in dismissal of the action. *See Moogan v. NYS Dep't of Health,* 778 N.Y.S.2d 161, 162 (App. Div. 2004) (affirming dismissal of complaint because petitioner failed to include legend "URGENT LEGAL MAIL" on envelope. Court noted "that the Department may have had actual notice by other means is of no moment"). In the case at hand, multiple copies of the summons and complaint were mailed to OCFS's principal office, but the envelope containing the documents did not include the legend "URGENT LEGAL MAIL" on the front. Additionally, none of the individuals named in the Complaint was personally served.

Thus, Plaintiff failed to properly effect service on any of the named Defendants. Plaintiff does not dispute the lack of service.

B. Extension Of Time To Effect Service

Rule 4(m) of the Federal Rules of Civil Procedure states:

> If a defendant is not served within 120 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m). A court will find good cause to extend the time for service only in "exceptional circumstances where the plaintiff's failure to serve process in a timely manner was the result of circumstances beyond its control." *Eastern Refractories Co., v. Forty Eight Insulations, Inc.*, 187 F.R.D. 503, 505 (S.D.N.Y. 1999) (quoting *National Union Fire Ins. Co. v. Sun*, No. 93 Civ. 7170, 1994 WL 463009, at *3 (S.D.N.Y. Aug. 25, 1994). It follows that, "inadvertence, neglect, mistake or misplaced reliance [on the attorney's part] does not constitute good cause." *Howard v. Klynveld Peat Marwick Goerdeler*, 977 F. Supp. 654, 658 (S.D.N.Y. 1997), *aff'd*, 173 F.3d 844 (2d Cir. 1999). Significantly, in her motion, Plaintiff concedes that she is unable to demonstrate good cause.

Even in the absence of good cause, however, the court has discretion to extend the time for service of the complaint *See Zapata v. City of New York,* 502 F.3d 192, 193 (2d Cir. 2007) ("We join several other circuits and hold that district courts may exercise their discretion to grant extensions under Rule 4(m) absent a showing of good cause."); *Beauvoir v. United States Secret Serv.*, 234 F.R.D. 55, 58 (E.D.N.Y. 2006) ("This Court . . . has discretion to extend the deadline

7

for effecting service [in the absence of good cause]."); *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 222 F.R.D. 79, 80 (S.D.N.Y. 2004) ("[D]istrict courts in appropriate circumstances may grant relief under [Rule 4(m)] notwithstanding the lack of good cause."). Moreover, the Advisory Committee Notes to Rule 4(m) explicitly provide that the Court is authorized "to relieve a plaintiff of the consequences of an application of [Rule 4(m)] even if there is no good cause shown." *See, e.g.*, *Rupert v. Metro-North Commuter R.R.*, No. 95 Civ. 4283, 1996 WL 447745, at *2 (S.D.N.Y. Aug. 7, 1996).

In *Feingold v. Hankin*, 269 F. Supp. 2d 268, 277 (S.D.N.Y. 2003) the court identified four factors to consider in deciding whether to grant an extension of time to serve the complaint absent good cause: "(1) whether the applicable statute of limitations would bar a re-filed action; (2) whether the defendant had actual notice of the claims asserted in the complaint; (3) whether the defendant had attempted to conceal the defect in service; and (4) whether the defendant would be prejudiced by the granting of plaintiff's request for relief from the provision." Carroll v. Certified Moving & Storage Co., No. 04-Civ-4446, 2005 WL 1711184, at *2 (E.D.N.Y. July 19, 2005); *Almonord v. Kingsbrook Jewish Med. Ctr.,* No. 04-Civ.-4071, 2007 WL 2324961 (E.D.N.Y. Aug. 10, 2007); *Beauvoir*, 234 F.R.D. at 58. However, the Second Circuit has pointed out that "before we will even consider vacating a Rule 4(m) dismissal for abuse of discretion, the plaintiff must ordinarily advance some colorable excuse for neglect." *Zapata,* 502 F.3d at 198 (citing *Bogle-Assegal v. Connecticut,* 470 F.3d 498 (2d Cir. 2006)). Plaintiff here not only fails to offer a colorable excuse for the neglect, Plaintiff has offered **no** excuse whatsoever for failing to serve the complaint for nearly 15 months. The Court turns now to an assessment of the four factors set forth in *Feingold v. Hankin* as they are applied to the facts of this case.

1. Statute Of Limitations Bars Refiling Of Plaintiff's Claim

Regarding the first factor – where the running of the statute of limitations would bar refiling – courts view this as favoring the plaintiff's claim for an extension. *See, e.g.*, *Beauvoir*, 234 F.R.D. at 58. "[T]his factor alone may be sufficient to justify extending the time for service." *See id.* (citing Advisory Committee Notes to Rule 4(m)). Granting extensions for this reason furthers the court's policy to promote litigation on the merits rather than mandate dismissal on procedural grounds. *See AIG Managed Mkt. Neutral Fund v. Askin Capital Mgmt, L.P.*, 197 F.R.D. 104, 111 (S.D.N.Y. 2000).

However, this does not mean that an extension will be granted in every case that may be otherwise time-barred. *See Eastern Refractories*, 187 F.R.D. at 505. A court's discretion is based in part on the plaintiff's diligence in attempting to effectuate service. *See Bogle-Assegal,* 470 F.3d at 507-08 (affirming dismissal of complaint where Plaintiff made no effort to cure defective service, despite being notified that service was defective, and no excuse for the failure was offered); *McKibben v. Credit Lyonnais*, No. 98 Civ. 3358, 1999 WL 604883, at *4 (S.D.N.Y. Aug. 10, 1999) (dismissing claim where plaintiff failed to show any diligence in attempting to effectuate service). "[T]he plaintiff must ordinarily advance some colorable excuse for neglect." *Zapata*, 502 F.3d at 198. Where no attempt to cure the defective service is made for more than a year and no excuse for the failure is offered, it is difficult to discern any colorable excuse for neglect. No affidavit has been provided from Plaintiff here offering an explanation for the nine month gap. Indeed, no information whatsoever has been provided which would offer a reasonable explanation for the delay. Thus, under the circumstances presented here, I do not view the fact

that the statute of limitations will bar refiling by Plaintiff as dispositive on the issue of an extension of Plaintiff's time to effectuate service of the complaint.

Moreover, even a cursory review of the allegations of the Complaint reveals that Plaintiff's claims would likely be barred by the statute of limitations even if the time to serve the complaint were extended. The applicable statute of limitations for claims brought pursuant to 42 U.S.C. § 1983 is three years. *See Owens v. Okure,* 488 U.S. 235 (1989) (statute of limitations for 1983 action is three years). Section 42 U.S.C. 1986 provides that "no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued." Thus, at the very earliest, Plaintiff's claim must arise out of actions taken by Defendants after November 2002. There are only two allegations in the Complaint relating to actions taken by Defendants after November 2002. The first relates to a letter sent by Defendant Suzanne Sennett in April 2005 indicating that Plaintiff had no role in the State's childcare program (Compl. ¶ 78). Plaintiff alleges that "Suzanne Sennett dealt the final damaging blow against Plaintiff, when she communicated in her April 2005 letter, that because Ms. Fried had been taken off the State List of Care Providers, she had no role in the child care program, was completely stripped of her qualifications, and would not be recognized as a day care/child care provider." According to the Complaint, however, this letter is referring to actions taken by Defendants in February 1995 (Compl. ¶ 69), more than 10 years before the Complaint was filed. The second allegation in the Complaint which occurred after March 2002 relates to Plaintiff's discovery in August 2003 that Defendants "communicated false and damaging information to the public, that Ms. Fried was operating an 'illegal' and/or 'unlicensed' facility since 'her license was

10

revoked' and her facility 'closed years ago' (in 2000)." (Compl. ¶ 71). Again, this allegation relates to actions taken by Defendants well before the November 2002 cut-off date.

Plaintiff cites *National Union Fire Ins. Co. Of Pittsburgh, P.A. v. Forman 635 Joint Venture*, No. 94 Civ. 1312, 1996 WL 272074 (S.D.N.Y. May 21, 1996) as support for her position that despite the absence of good cause, or even a colorable excuse for neglect, this Court should exercise its discretion and grant Plaintiff's motion for an extension. In *National Union,* however, plaintiff's counsel served defendant at the place of business of the co-defendant business (of which he was a principal) rather than at his actual place of business. The court found that the mistaken belief of plaintiff's counsel that service had been proper was sufficient justification for an extension of the time to serve the complaint. Plaintiff here cannot make the same argument. Plaintiff was put on notice well before the expiration of the 120-day period that service was improper, yet Plaintiff's prior counsel did nothing to effect proper service of the Complaint. Subsequently, when Defendants did not agree to extend Plaintiff's time to extend the Complaint, Plaintiff again did nothing for more than nine months.

Plaintiff has conceded that her previous attorney, Mr. Raum, failed to cure the defect in service despite repeated notification of the defect. Mr. Raum failed to cure the defect in service within 120 days of the filing of the Complaint even after repeated notification by Defendants of that failure. While dismissal pursuant to Rule 4(m) for failure to effect service within the 120 day period is generally a dismissal without prejudice, such a dismissal in this instance is with prejudice since the Plaintiff will be time-barred from any refiling. However, the Plaintiff proffers no colorable excuse for Mr. Raum's neglect. Plaintiff concedes that Mr. Raum did not engage in a "pronounced pattern of nonperformance," yet he nevertheless failed to properly serve any of the

Defendants, despite repeated notification from Defendants' counsel. In fact, Plaintiff argues that Mr. Raum's repeated failure to properly serve Defendants in this case should not penalize Plaintiff. It is well established, however, that "[i]n our adversary system . . . 'civil litigants are bound by the acts and omissions of their freely selected attorneys'." *Kurzberg v. Ashcroft*, No. 04 CV 3950, 2006 WL 2738991, at *6 (E.D.N.Y. Sept. 25, 2006) (quoting *Reilly v. NatWest Mkts. Grp., Inc.*, 181 F.3d 253, 271 (2d Cir. 1999)).

Allowing a party to avoid the consequences of the acts or omissions of her freely selected agent would be wholly inconsistent with our system of representative litigation in which each party is deemed bound by the acts of his lawyer-agent. *See Link v. Wabash R.R. Co.,* 370 U.S. 626, 633-34 (1962) (complaint dismissed for failure to prosecute); *SEC v. McNulty,* 137 F.3d 732, 739 (2d Cir. 1998); *see also Kurzberg v. Ashcroft,* 2006 WL 2738991, at *6 ("In our adversary system, however, 'civil litigants are bound by the acts and omissions of their freely selected attorneys'") (quoting *Reilly*, 181 F.3d at 271); *Saren v. Palma,* 693 N.Y.S.2d 207, 208 (App. Div. 1999) ("It is well settled that in the context of civil litigation, an attorney's errors or omissions are binding on the client and, absent extraordinary circumstances, a claim of ineffective assistance of counsel will not be entertained"). Even gross negligence of an attorney is not grounds for relief under this rule. *Nemaizer v. Baker*, 793 F.2d 58, 63 (2d Cir. 1986) (citing cases); *Dominguez v. United States,* 583 F.2d 615, 618 (2d Cir. 1978) (per curiam) (where attorney has inexcusably and completely abandoned responsibilities to client, party must still demonstrate his own diligent efforts to induce the attorney "to fulfill his duty"). In the current circumstances, the failure is obviously not attributable to any lack of diligence on the part of Plaintiff's current counsel and

should not be construed as such.  The problem here clearly lies with former counsel, for reasons which are unknown to the Court.  Nonetheless, the end result unfortunately cannot be avoided.

This case is closely aligned with *Bogle-Assegal*, where the Second Circuit refused to overturn the district courts's denial of an extension of time because plaintiff had failed to offer any colorable excuse for her neglect to properly serve the complaint.  Similarly, in *Hertzner v. U.S. Postal Service,* No. 05 Civ. 2371, 2007 WL 869585, at * 7-8 (E.D.N.Y. Mar. 20, 2007), the court refused to exercise its discretion to grant plaintiff's request for an extension where the plaintiff failed to identify a single attempt to properly effect service within the 120-day time limit.  The court noted that the moving defendants had actual notice of the action because the complaint had been faxed to them and defendants' counsel had notified plaintiff's counsel that service was improper.  Just as here, plaintiff's counsel was advised that proper service would not be waived, yet plaintiff's counsel failed to properly effectuate service.

    2.    Actual Notice

The second factor — actual notice — presents the question whether service upon OCFS's principal office without individual service on each defendant named in the Complaint is sufficient to constitute actual notice for Rule 4(m) purposes.  The bedrock principle behind the requirement of service of process is to give notice of the action in such a way that the defendant may have a "fair opportunity to answer the complaint and present defenses and objections." *See Henderson v. United States*, 517 U.S. 654, 672 (1996).  However, mere notice to a defendant that a complaint is pending against it does not constitute actual notice of each and every individual claim asserted in the complaint.  Thus, there is a distinction between actual notice of the complaint and actual notice of the claims asserted therein.

Plaintiff acknowledges that the individual OCFS defendant-employees were not served personally or by certified mail. Only the OCFS office was served, albeit with an envelope lacking the requisite language "URGENT LEGAL MAIL." N.Y. C.P.L.R. § 307(2) requires service on an officer sued in his official capacity to be effected by personal delivery. Defendant OCFS acknowledges that an attorney from the Attorney General's office notified each of the Individual Defendants that a complaint naming them as defendant had been filed, but at copy of the Complaint was never forwarded to them.

In *Feingold v. Hankin*, 269 F.Supp.2d 268 (S.D.N.Y. 2003), the case that Plaintiff principally relies on in asserting its claim that the OCFS defendant-employees had actual notice, the plaintiff, in a dispute over a retirement pension, was required to serve Westchester County and obtain waivers for personal service from the four individual defendants being sued in their official capacities. *Id.* at 277. The court found service of process to be improper because there was no evidence in the record that Westchester Community College, one of the four named defendants, received a summons and waiver as required by statute. *Id.* at 276. In fact, in that case, the manner in which the County Attorney – the party designated by statute to receive process for Westchester Community College – received notice of the action was through the mailing of the summons from two of the individual defendants. *Id.* However, the court in *Feingold* found that "the County Attorney had actual notice of the complaint" and granted an extension based on that fact. *Id.* at 277.

However, the mere fact that the Defendant has actual notice of the complaint is insufficient, standing alone, to justify an extension of time to serve the complaint where Plaintiff was aware that service was not effected, yet makes "no showing whatever as to any effort on her

14

part to effect personal service on" Defendants. *Bogle-Assegal,* 470 F.3d at 509. "In a challenge to service of process, the fact that a defendant has received prompt notice of the action is of no moment . . . Notice received by means other than those authorized by statute does not bring a defendant within the jurisdiction of the court." *Macchia v. Russo,* 496 N.E.2d 680, 682 (N.Y. 1986)(citing *De Zego v. Donald F. Bruhn, M.D., P.C.,* 492 N.E.2d 1217 (N.Y. 1986); *Feinstein v. Bergner*, 397 N.E.2d 1161 (N.Y. 1979).

### 3. Knowledge Of Ineffective Service

The third factor considered by the *Feingold* Court namely, did the defendant attempt to conceal the lack of service, weighs decidedly in favor of the Defendants. Plaintiff conceded that this factor favors Defendants and candidly acknowledges that Defendants notified Plaintiff as early as February 2006 that the named Defendants had not been properly served.

### 4. Prejudice To Defendants

As to this final factor, the Court must examine the prejudice to Defendants in the event the extension is granted. There is no *per se* rule on what constitutes prejudice within the context of untimely or improper service of process. *See Zapata*, 502 F.3d at 198. However, "[i]t is obvious that any defendant would be harmed by a generous extension of the service period beyond the limitations period for the action . . . ." *Id.* According to Plaintiff, "because this action has lain dormant since filing, Defendants have suffered no delay or expense." Pl. Mem. at 6. Defendants, on the other hand, assert that the OCFS defendant-employees would be prejudiced because they were not afforded personal service and had no actual knowledge of the allegations in the complaint. Def. Mem at 4. Indeed, in the time that has lapsed between the original filing of the

complaint and the filing of the instant motion, many of them have left the employ of OCFS. *Zapata,* 502 F.3d at 198.

On balance, any prejudice to Defendants is slight and I am inclined to view this factor as favoring Plaintiff. However, "[l]ack of prejudice alone is insufficient; a plaintiff must also show a reasonable and diligent attempt at service." *National Union,* 1996 WL 272074, at * 2. Plaintiff here is unable to demonstrate that she made a reasonable and diligent attempt at service.

This is a difficult recommendation for me to make to District Judge Garaufis, particularly in light of the Second Circuit's clear preference that claims be resolved on the merits, and it is one that I do not make lightly. *See Almonord v. Kingsbrook Jewish Med. Ctr.,* No. 04-Civ-4071, 2007 WL 2324961 at *13 (E.D.N.Y. Aug. 10, 2007). While dismissal for failure to serve the Complaint is a drastic remedy where the action may be barred by the statute of limitations if refiled, when a plaintiff is unable to provide *any* explanation for the failure to serve the complaint for nearly 15 months, despite being put on notice by Defendants that service was defective, there is a complete lack of justification for extending the time to serve the Complaint now. The outcome here will undoubtedly be perceived as a harsh one. Nonetheless, it is the appropriate one when applying the law to the facts of this case. Plaintiff's recourse here is with her prior counsel. Accordingly, it its my recommendation to Judge Garaufis that Plaintiff's motion be DENIED, and that the Complaint dismissed.

### III. CONCLUSION

For the reasons set forth above, I recommend to Judge Garaufis that Plaintiff's motion to extend the deadline for service of the Complaint be denied

**Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 10 days of service and failure to file objections within this period waives the right to appeal. See 28 U.S.C. § 636(b)(1)(c) (2006); Fed. R. Civ. P. 6(a), 6(e), & 72; *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir.), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996). Therefore, the parties are directed to file any written objections to this Report and Recommendation with District Judge Garaufis not later than 10 days from the date of service of this Order.**

      **SO ORDERED.**

Dated: Central Islip, New York
       July 18, 2008

                                        /s/ A. Kathleen Tomlinson
                                        A. KATHLEEN TOMLINSON
                                        U.S. Magistrate Judge